IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

HAROLD SANDERS,

      Plaintiff,

v.                                  CASE NO. 2:05-cv-00483

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Harold Eugene Sanders, Jr. (hereinafter referred to as "Claimant"), protectively filed an application for DIB on September 24, 2003, alleging disability as of February 11, 1999, due to back, neck and leg problems, hearing loss, vision loss, nerves, alcoholism and shortness of breath.  (Tr. at 56-58, 70.)  The claim was denied initially and upon reconsideration.  (Tr. at

36-39, 43-45.)   On June 1, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ").   (Tr. at 46.)   The hearing was held on December 2, 2004, before the Honorable Arthur Conover.   (Tr. at 174-206.)   By decision dated December 21, 2004, the ALJ determined that Claimant was not entitled to benefits.   (Tr. at 12-22.)   The ALJ's decision became the final decision of the Commissioner on April 13, 2005, when the Appeals Council denied Claimant's request for review.   (Tr. at 4-6.)   On June 13, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.   See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).   A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.   20 C.F.R. § 404.1520 (2004).   If an individual is found "not disabled" at any step, further inquiry is unnecessary.   Id. § 404.1520(a).   The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.   Id. § 404.1520(b).   If the claimant is not, the second inquiry is whether claimant suffers

from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at

3

14.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic back, neck and knee syndromes of uncertain etiology, mild chronic obstructive pulmonary disease, decreased visual acuity, anxiety disorder and alcohol dependence.  (Tr. at 14.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 14.)  The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations.  (Tr. at 15.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 19.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as assembler, machine operator and hand packer, which exist in significant numbers in the national economy.  (Tr. at 20.)  On this basis, benefits were denied.  (Tr. at 21.)

Scope of Review

     The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d
1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not
abdicate their traditional functions; they cannot escape their duty
to scrutinize the record as a whole to determine whether the
conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d
396, 397 (4th Cir. 1974).

    A careful review of the record reveals the decision of the
Commissioner in this case is supported by substantial evidence.

Claimant's Background

    Claimant was forty-eight years old at the time of the
administrative hearing.  (Tr. at 176.)  Claimant has a high school
education.  (Tr. at 176.)  In the past, he worked in the coal
mines.  (Tr. at 179.)

The Medical Record

    The court has reviewed all evidence of record, including the
medical evidence of record, and will summarize it briefly below.

    The record includes Claimant's school records.  Claimant
received average to below average grades.  (Tr. at 102.)  Claimant
took the Stanford achievement test in 1966, while in the third
grade, and scored on the third grade level.  In 1969, while in the
seventh grade, Claimant scored on the sixth grade level.  (Tr. at
103.)

On December 9, 2003, Stephen Nutter, M.D. examined Claimant at the request of the State disability determination service.  Visual acuity was 20/200 in the right eye and 20/70 in the left eye, without corrective lenses.  (Tr. at 106.)  Dr. Nutter diagnosed chronic back and neck pain, chronic cervical and lumbosacral strain without evidence of radiculopathy, athralgia, probable degenerative arthritis and shortness of breath.  Dr. Nutter further stated that Claimant

> is a 47-year-old white male complaining of problems with his back and neck.  He was noted to have pain and tenderness in the lumbar spine.  Straight leg raise test, grip strength, fine manipulation skills, sensory and motor modalities were intact with the exception of the left foot as noted which is due to give away weakness. He is uncomfortable in the supine position and couldn't squat.  There is no definite evidence of nerve root compression.

(Tr. at 109.)

Regarding Claimant's complaints of joint pain, Dr. Nutter stated that Claimant "had pain and tenderness of both shoulders, both ankles and at the MTP joint of the great toes bilaterally.  He had pain and tenderness of the left knee.  There is no evidence of rheumatoid arthritis.  On physical exam there are no rheumatoid nodules, capsular thickening, particular swelling or tophi.  There is no ulnar deviation."  (Tr. at 109.)  Dr. Nutter stated that as to Claimant's complaints of shortness of breath, "[h]e had somewhat coarse breath sounds with diminished air movement but there are no wheezes, rales, rhonchi, clubbing, cyanosis or dyspnea noted

6

today." (Tr. at 110.)

X-rays of the lumbar spine on December 9, 2003, were normal. (Tr. at 111.)

On December 18, 2003, Kelly Rush, M.A., a supervised psychologist supervised by Dale M. Rice, M.A., examined Claimant at the request of the State disability determination service. Ms. Rush diagnosed anxiety disorder, not otherwise specified, alcohol dependence, polysubstance abuse in remission on Axis I and made no Axis II diagnosis. Ms. Rush explained that she deferred an Axis II diagnosis due to invalidity of test results. She noted that Claimant did not appear to cooperate on the Cognistat, nor portions of the interview. Regarding Claimant's reports of memory loss, Ms. Rush noted that there was insufficient evidence of memory problems. (Tr. at 120.) Claimant's daily activities include watching television, visiting with his parents and playing with his cat. He goes to the post office on a weekly basis. Social functioning was moderately deficient based on his interaction with the examiner and staff. Attention and concentration were within normal limits based on his ability to do serial 3's. Persistence and pace were moderately deficient based on his performance on the WAIS-III. Ms. Rush opined that Claimant was incapable of managing benefits due to alcohol dependence. (Tr. at 121.)

A State agency medical source completed a Mental Residual Functional Capacity Assessment on January 24, 2004, and opined that

Claimant was moderately limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. at 126.) On February 19, 2004, a second State agency medical source agreed with this assessment. (Tr. at 131-32.)

On January 21, 2004, a State agency medical source completed a Physical Residual Functional Capacity assessment and opined that Claimant could perform medium work reduced by a need to avoid concentrated exposure to extreme cold, vibration and hazards. (Tr. at 134-41.) This assessment was affirmed by a second State agency medical source on April 14, 2004. (Tr. at 141.)

A State agency medical source completed a Psychiatric Review Technique form on January 24, 2004, and opined that Claimant had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace and no episodes of decompensation. (Tr. at 144-57.) This assessment was affirmed by a second State agency medical source on April 24, 2004. (Tr. at

8

144.)

Ms. Rush, this time supervised by Lisa Tate, M.A., completed a Medical Assessment of Ability to do Work-Related Activities on November 8, 2004, based on the results of her earlier evaluation on December 18, 2003.  She opined that Claimant had a poor ability to relate to coworkers, deal with the public, interact with supervisors, behave in an emotionally stable manner, maintain personal appearance and relate predictably in social situations. (Tr. at 164-66.)  When limitations opined by Ms. Rush were included in a hypothetical question at the administrative hearing, the vocational expert could identify no jobs.  (Tr. at 204-05.)

Phillip VanPelt, M.D. examined Claimant on March 30, 2000. Dr. VanPelt diagnosed cervical strain, thoracic strain and lumbosacral strain.  (Tr. at 167-73.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to find Claimant's vision impairments severe; (2) the ALJ erred in assessing Claimant's credibility; and (3) the ALJ erred in his residual functional capacity finding and did not properly question the vocational expert.  (Pl.'s Br. at 10-17.)

The Commissioner argues that (1) substantial evidence supports the ALJ's determination that Claimant was not disabled; (2) the ALJ adequately considered Claimant's visual impairment; (3) the ALJ

evaluated Claimant's credibility in accordance with the regulations; and (4) the vocational expert's testimony provided substantial evidence that Claimant was not disabled. (Def.'s Br. at 9-14.)

Claimant first argues that the ALJ erred in failing to find his visual impairments severe. (Pl.'s Br. at 10-11.) In his decision, the ALJ determined that Claimant's "decreased visual acuity" was a severe impairment. (Tr. at 14.) Later in his decision, the ALJ observed that

> [d]uring the consultative medical examination, testing showed uncorrected visual acuities of 20/200 in the right eye and 20/70 in the left eye. Despite visual acuities in this range, the claimant continues to drive an automobile and perform his daily activities. The consultative psychological examiners observed that the claimant did not appear to have any vision problem during their evaluation, which included extensive pen-and-paper testing (Exhibit 2F, p. 1). The claimant was observed in a face-to[-]face interview at the Social Security field office not to have any problem seeing (Exhibit 1 E, p. 3). The medical evidence establishes an impairment, but not one that would more than minimally affect the claimant's ability to do basic work tasks.

(Tr. at 16.)

Although there is some inconsistency in the ALJ's decision, it appears to the court that the ALJ ultimately concluded that the Claimant's visual impairment was not severe. Although the Commissioner suggests that the ALJ determined that Claimant's residual functional capacity was reduced by a need for oral instructions because of his visual impairments, a review of the transcript of the administrative hearings suggests otherwise.

Claimant complained of difficulty reading at the administrative hearing and it appears that the ALJ included the limitation of a need for oral instructions in the hypothetical question because of Claimant's complaints related to his ability to read.  (Tr. at 183.)  Indeed, the issue of Claimant's alleged visual impairment was not raised at the administrative hearing, even in questioning by Claimant's counsel.

A severe impairment is one "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c) (2004); see also 20 C.F.R. § 404.1521(a) (2004); Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2004).  Examples of basic work activities are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that

11

Claimant's visual impairment was not severe.  The ALJ provided an adequate explanation for this finding, and his reasons are supported by substantial evidence of record.  Claimant drives an automobile, and drove himself to the hearing.  Claimant did not testify to any vision problems that limited his ability to drive, and instead testified that driving was difficult because of his mental condition.  (Tr. at 186.)  Aside from the finding by the consultative physical examiner that Claimant's uncorrected vision was 20/200 in the right and 20/70 in the left eye, no other medical or other source mentions visual limitations.  As such, the court proposes that the presiding District Judge find that the ALJ's determination that Claimant's visual impairment was not severe is supported by substantial evidence.

Next, Claimant argues that the ALJ erred in his pain and credibility assessment.  Claimant takes issue with the ALJ's finding that his failure to submit the results of certain objective tests is evidence that these studies did not show the presence of spinal conditions that would establish the severity alleged.  Claimant also takes issue with the ALJ's findings about his daily activities and comments by the ALJ related to Claimant's failure to obtain medical care and Claimant's use of alcohol and his ability to drive a car.  (Pl.'s Br. at 12-15.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the

12

applicable regulation, case law and social security ruling ("SSR") and are supported by substantial evidence.  20 C.F.R. § 404.1529(b) (2004); SSR 96-7p, 1996 WL 374186 (July 2, 1996); <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).  The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors, Claimant's medication and treatment other than medication.  (Tr. at 16-17.)

The ALJ explained that he rejected Claimant's subjective complaints because (1) Claimant's allegations are not supported by the objective medical findings; (2) Claimant's daily activities are incompatible with pain of the intensity and frequency alleged; (3) the alleged severity of Claimant's complaints is not supported by the level or intensity of medical treatment; and (4) the Claimant has relied on over-the-counter analgesics, although he denies they are effective.  (Tr. at 16-17.)

The ALJ explained his findings as follows:

> The claimant's allegations of disabling pain are not supported by the objective medical findings.  Although the claimant reported having had a MRI and CT scan of his back and neck, none were submitted, indicating that the studies did not show the presence of spinal conditions that would likely result in symptoms of the severity alleged.
> The claimant's daily activities are incompatible with pain of the intensity and frequency alleged.  Although the claimant says that he has trouble climbing stairs, he lives in a two-story home.  The claimant's bedroom is on the second floor.  Despite his back problem, the claimant testified that he sleeps on the couch two to three times a week.  The claimant reports

trouble steering and shifting gears due to his shoulder pain and trouble operating the clutch in his car due to leg pain, but he continues to drive as needed.  The claimant can take care of his personal needs, does his own shopping, visits his parents several days a week, and goes to the post office daily.

The alleged severity of the claimant's pain and other symptoms is not supported by the level and intensity of medical treatment.  The claimant submitted no record of professional medical treatment during the relevant time period.  The claimant argues that he has no insurance and cannot afford medical care on his pension. However, the claimant maintains a car and continues to enjoy alcohol.  The claimant denied having any knowledge that there are clinics which charge on a sliding scale, which suggests that he has not been looking for medical help.

(Tr. at 17.)

While Claimant disagrees with the ALJ's findings cited above, the court has reviewed them and Claimant's testimony at the administrative hearing and proposes that the presiding District Judge find that the ALJ's credibility findings are supported by substantial evidence.  The conclusions drawn by the ALJ are reasonable, and the court can find no material misstatement by the ALJ in his findings.  Claimant's lack of treatment and the resulting lack of objective medical evidence supporting his subjective complaints, along with the other factors identified in SSR 96-7p, all counsel in favor of a finding that Claimant's subjective complaints are not entirely credible.

Next, Claimant argues that the ALJ stated that the vocational expert confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), but that the transcript

14

of the administrative hearing indicated the ALJ had not asked her about any inconsistency between her testimony and the DOT. (Pl.'s Br. at 15.)

The Commissioner argues that no conflict between the vocational expert's testimony and the DOT have been identified in the vocational expert's testimony or by the Claimant on appeal to this court or at any other time.  The Commissioner argues the court should rely on the decision of the United States Court of Appeals for the Third Circuit in <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 557 (3d Cir. 2005).  (Def.'s Br. at 13-14.)

The ALJ stated in his decision that the vocational expert testified that her testimony was consistent with the DOT.  (Tr. at 20.)  In fact, the ALJ never asked the vocational expert whether there was a conflict between her testimony and the DOT. Nevertheless, the court proposes that the presiding District Judge find that any error by the ALJ in failing to ask the vocational expert about whether there was a conflict between her testimony and the DOT is harmless.

Courts have applied a harmless-error analysis in the context of Social Security appeals.  One illustrative case provides:

> Moreover, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir.1988). The procedural improprieties alleged by Morris will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.

15

Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Our Court of Appeals, in a number of unpublished decisions, has taken the same approach.   See, e.g., Bishop v. Barnhart, No. 03-1657, 2003 WL 22383983, at *1 (4th Cir. Oct. 20, 2003); Camp v. Massanari, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec. 27, 2001); Spencer v. Chater, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996).

Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) states that

> [o]ccupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.   At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

In a section entitled "responsibility to ask about conflicts," SSR 00-4p states that

> [w]hen a [vocational expert] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible

16

conflict between the [vocational expert] evidence and
information provided in the DOT .... In these
situations, the adjudicator will: Ask the [vocational
expert] if the evidence he or she has provided conflicts
with information provided in the DOT ... and [i]f the
[vocational expert's] evidence appears to conflict with
the DOT, the adjudicator will obtain a reasonable
explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at * 4.

At the outset, the court notes some ambiguity in SSR 00-4p.
Arguably, SSR 00-4p requires the presence of an apparent unresolved
conflict between vocational expert evidence and the DOT before the
ALJ must elicit an explanation from the vocational expert about the
conflict.  On the other hand, SSR 00-4p also imposes an affirmative
duty on the ALJ to question the vocational expert in the first
instance about the existence of a conflict.  Indeed, how can the
ALJ learn of a conflict if he does not ask if one exists?

The United States Court of Appeals for the Fourth Circuit has
not directly addressed the issue of whether, pursuant to SSR 00-4p,
the ALJ must ask whether there is a conflict between the DOT and
vocational expert testimony.  In one recent unpublished decision,
the Fourth Circuit noted that while the ALJ failed to explain how
he resolved a conflict between the DOT and vocational expert
testimony, the ALJ abided by SSR 00-4p in all other respects,
including when "he inquired on the record whether the vocational
expert's testimony was consistent with the [DOT]."  Fisher v.
Barnhart, No. 05-1473, 2006 WL 1328700, at *7 (4th Cir. May 16,
2006).

17

The court has considered the decision of the United States
Court of Appeals for the Third Circuit in Rutherford.   In
Rutherford, the court aptly observed that SSR 00-4p "was designed
to address the already-well-established (in this Circuit and
elsewhere) obligation of an ALJ to develop the record during an
adjudicative hearing."   Rutherford, 399 F.3d at 556.   The court
determined that "[a]lthough the vocational expert here did
occasionally provide testimony that identified the jobs listed,
only once did he 'provide[] evidence about the requirements of a
job or occupation.'"   Id. at 557 (quoting SSR 00-4p, 2000 WL
1898704, at *4).   The vocational expert in Rutherford testified
about Claimant's ability to return to her previous work and
identified three jobs.   Id. at 551.   The court explained that the
one time that the vocational expert in Rutherford provided evidence
about the requirements of a job or occupation was in the context of
testifying about claimant's past employment and whether she would
be able to return to it.   The court reasoned that "[i]f we were to
exclude that testimony on the premise that the ALJ had failed to
explore it further with the vocational expert, that would actually
run counter to Rutherford's interest, for it would inappropriately
open up the possibility that she could in fact have returned to her
past employment, thus potentially defeating her claim at step 4."
Id. at 557.   Thus, the court in Rutherford decided to "consider the
quoted SSR 00-4p directive [that the ALJ will inquire on the record

18

as to whether there is an inconsistency between the vocational
expert's testimony and the DOT] to be exemplary, rather than
exhaustive." Id.

Rutherford is a decision by a Court of Appeals other than the
Fourth Circuit.  In addition, it is not entirely clear from the
decision, the nature or extent of the vocational expert's testimony
in that case about the jobs claimant could perform.  As such, the
court declines to follow Rutherford.

The court need not resolve the issue of whether the ALJ erred
in failing to ask the vocational expert about a conflict between
the DOT and the vocational expert's testimony in any event.
Instead, the court proposes that the presiding District Judge find
that any error by the ALJ in failing to ask about a conflict
between the vocational expert's testimony and the DOT is harmless.
The court could not ascertain any actual conflict between the jobs
identified by the DOT and their classifications and descriptions
within the DOT, and Claimant has identified none.  See i.e., U.S.
Department of Labor, Dictionary of Occupational Titles, 920.587-108
(4th ed. 1991) (hand packager).

Finally, Claimant argues that the ALJ erred in failing to
adopt certain limitations opined by Ms. Tate related to Claimant's
mental impairment, including that Claimant had a moderate
limitation in persistence and pace.  In addition, Claimant asserts
that while the ALJ found a moderate limitation in social

19

functioning and limited Claimant to work involving a small group or working alone, the ALJ did not account for any limitation related to Claimant's ability to interact with supervisors.  Claimant relies on the opinion of Ms. Tate that Claimant had a poor ability to relate to coworkers, the public and supervisors.  (Pl.'s Br. at 16-17.)

Claimant refers to evidence from Ms. Tate.  Ms. Tate is a licensed psychologist who supervised Ms. Rush when Ms. Rush completed a Medical Assessment of Ability to do Work-Related Activities (Mental).  Ms. Rush also conducted a consultative mental examination at an earlier date, supervised by another psychologist. The court considers this evidence to have come from Ms. Rush rather than Ms. Tate.

In his decision, the ALJ explained that

[t]he psychological evaluation [by Ms. Rush] did not provide any clinical findings or rationale for the claimant's "moderately deficient" pace and persistence that could not be accounted for by his disinterest and lack of motivation to perform during the evaluation.  The claimant denied ever being involun[tar]ily terminated from employment, and he specifically denied being fired from any of the jobs he held for short periods of time since his retirement in 1999.  The undersigned concludes that the claimant is not significantly limited in the ability to maintain attention, concentration, or pace.

(Tr. at 18.)

Regarding Claimant's social functioning, the ALJ accepted

the State agency consultants' opinions that the claimant is moderately limited in interacting appropriately with the general public and maintaining socially appropriate behavior.  The consultative psychological examiners

20

observed that the claimant's interaction with the staff
was "moderately deficient" (Exhibit 2F, p. 6).
Consistent with the assessment of the State agency
consultants, the claimant testified that he has never had
any significant difficulty getting along with coworkers
or responding to supervision, but he acknowledged some
irritability now secondary to anxiety, which warrants a
preference for the claimant working alone or in a small
group (Exhibit 4E, p. 4).  The claimant does not attend
church, belong to clubs, or participate in any organized
social activity.   He maintains good relations with
immediate family members, who are supportive.  He talks
informally with his neighbor regularly.   He makes and
receives visits from friends "once in a while" (Exhibit
4E, p. 4) The claimant does not date or have any social
outings.    However, he is able to shop and transact
business at the post office regularly.

(Tr. at 18.)

The court proposes that the presiding District Judge find that
substantial evidence supports the ALJ's decision to afford little
weight to the opinions of Ms. Rush that Claimant has a moderate
limitation in persistence and pace and a poor ability to relate to
supervisors.   The ALJ provides an adequate explanation in his
decision for rejecting the opinions of Ms. Rush, a one-time
examiner, and his findings are in keeping with the applicable
regulation.  20 C.F.R. § 404.1527(d)(2) (2004) (The opinions of
medical sources should be weighed using the following factors: (1)
length of the treatment relationship and frequency of evaluation,
(2) nature and extent of the treatment relationship, (3)
supportability, (4) consistency (5) specialization, and (6) various
other factors.).

For the reasons set forth above, it is hereby respectfully

RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

22

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

 June 9, 2006                    *Mary E. Stanley*
       Date                      Mary E. Stanley
                                 United States Magistrate Judge